**COMMONWEALTH OF PENNSYLVANIA**

v.

**Henry J. CIANFRANI.**

**Civ. A. No. 80–3135.**

United States District Court,
E.D. Pennsylvania.

Jan. 7, 1985.

A. Jay Molluso, Chief Deputy Atty. Gen., Collections Unit, Tax and Finance Section, Harrisburg, Pa., for plaintiff.

Charles M. Golden, Weiss & Golden, Philadelphia, Pa., for defendant.

## SUR PLEADINGS AND PROOF

LUONGO, Chief Judge.

This is a civil action brought by the Commonwealth of Pennsylvania under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The Commonwealth seeks to recover threefold the damages it alleges were sustained by reason of defendant Henry J. Cianfrani's placement of "ghost" workers on the payrolls of the Pennsylvania Senate. By agreement of the parties, the case was submitted to the Court for resolution based on a stipulation of facts (Document # 17) and the record in *United States v. Cianfrani*, CR 77–412. For the reasons discussed below, I find in favor of plaintiff and against defendant.

### Findings of Fact

1. Henry J. Cianfrani ("Cianfrani") was a member of the Senate of the Commonwealth of Pennsylvania from 1966 until December 15, 1977. (Stipulation, ¶ 2).

2. As a member of the Pennsylvania Senate, Cianfrani was employed by and associated with an "enterprise" the activities of which affect interstate commerce.

3. On September 23, 1977, a Grand Jury sitting in the United States District Court for the Eastern District of Pennsylvania indicted Cianfrani on the following charges:

a. Conducting and participating in the affairs of an enterprise, the activities of which affect interstate commerce, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c);

b. Knowingly using the mail for the purpose of (i) executing a scheme or artifice to defraud the Commonwealth of Pennsylvania and its citizens and (ii) obtaining money by false pretenses, in violation of 18 U.S.C. § 1341;

c. Obstruction of justice, in violation of 18 U.S.C. § 1503; and

d. Income tax evasion, in violation of 26 U.S.C. § 7201. (Stipulation, ¶ 3; Indictment, Counts 1–110).

4. As part of the indictment against Cianfrani under 18 U.S.C. § 1962(c), the Grand Jury charged, in relevant portion, that during the period when Cianfrani was chairman of the Senate Committee on Appropriations and the Senate Majority Committee on Appropriations ("Majority Committee") he placed two individuals, namely Vera Domenico and Evangelina Domenico, on the payroll of the Majority Committee; that those two individuals received salary from the Majority Committee in the form of biweekly checks; that the approximate gross salary from the Majority Committee for Vera Domenico was $8,050.08 in 1973, $8,922.60 in 1974, and $795 in 1975; that the approximate gross salary from the Majority Committee for Evangelina Domenico was $4,125.06 in 1975 and $3,895.89 in 1976; that Vera Domenico and Evangelina Domenico would, and did, perform no duties or services for the Majority Committee or the Pennsylvania Senate; and that said actions were parts of a scheme and artifice (i) to defraud the Pennsylvania Senate and the citizens of the Commonwealth of money and of their right to the defendant's faithful performance of his official duties, and (ii) to obtain money by means of false and fraudulent pretenses, representations and promises. (Indictment, Count 1).

5. The Grand Jury further charged that, as part of the aforesaid scheme and artifice, Cianfrani caused Evangelina Domenico to be transferred from the payroll of the Majority Committee to the payroll of the Pennsylvania Senate Majority Leadership Expense Fund ("Expense Fund") in approximately November, 1976; that Evangelina Domenico received salary from the Expense Fund until approximately June 30, 1977; that the approximate gross salary paid to Evangelina Domenico from the Expense Fund during that period was $4,354.23; and that Evangelina Domenico

would, and did, perform no duties or services for the Pennsylvania Senate Majority Leadership, the Pennsylvania Senate, or any member thereof. (Indictment, Count 1).

6. The Grand Jury charged that Cianfrani violated 18 U.S.C. § 1341 by knowingly causing to be delivered by mail envelopes containing checks to Vera Domenico and Evangelina Domenico for the purpose of executing the aforesaid scheme and artifice. (Indictment, Counts 2–99).

7. On December 30, 1977, Cianfrani entered pleas of guilty to Counts 1 to 102 of the indictment, which Counts charged him with violating 18 U.S.C. § 1962(c) and 18 U.S.C. § 1341. (Stipulation, ¶ 4).

8. On December 30, 1977, Cianfrani also entered pleas of guilty to Counts 103 to 106 of the indictment, which Counts charged him with obstruction of justice, in violation of 18 U.S.C. § 1503, and pleas of *nolo contendere* to Counts 107 to 110 of the indictment which charged him with tax evasion, in violation of 26 U.S.C. § 7201. (Stipulation, ¶ 4).

9. Cianfrani's pleas of guilty and *nolo contendere* were accepted by the Court. (Stipulation, ¶ 4).

10. Cianfrani participated in the affairs of the Pennsylvania Senate through the scheme and artifice described in Findings of Fact 3a, 3b, 4, 5, and 6.

11. The scheme and artifice described in Findings of Fact 3a, 3b, 4, 5, and 6, which included more than two violations of 18 U.S.C. § 1341 within a period of ten years, constituted a pattern of racketeering activity. 18 U.S.C. § 1961(1)(B), (5).

12. On June 26, 1978, the Pennsylvania Senate adopted Senate Resolution Number 111, which authorized and directed the President of the Senate to take all steps necessary to recover from Cianfrani $30,-232.80, the total amount of payments which the Senate determined had been made to Vera and Evangelina Domenico. (Stipulation, ¶ 5).

13. The Commonwealth of Pennsylvania was injured in its business or property by reason of Cianfrani's violation of 18 U.S.C. § 1962(c) in the amount of $30,232.80.

14. Pursuant to Resolution 111, the President of the Senate requested the Secretary of the Pennsylvania State Employees' Retirement Board to assign to the Senate retirement payments otherwise due Cianfrani until the sum of $30,232.80 had been recouped. (Stipulation, ¶ 5; *Cianfrani v. Commonwealth of Pennsylvania State Employees' Retirement Board*, 57 Pa.Cmwlth. 135, 417 A.2d 279, 280 (1980), *aff'd on rehearing*, 57 Pa.Cmwlth. 143, 426 A.2d 1260 (1981), *aff'd*, 501 Pa. 189, 460 A.2d 753 (1983) (per curiam)).

15. The Commonwealth's right to so recoup the money pursuant to 71 Pa.C.S.A. § 5953 was upheld in a state court action brought by Cianfrani in which Cianfrani sought a declaratory judgment and writ of mandamus against the set-off on constitutional grounds. *Cianfrani v. Commonwealth of Pennsylvania State Employees' Retirement Board, supra.*

16. The sum of $30,232.80 had been set off from Cianfrani's retirement payments by November 1, 1979. (Stipulation, ¶ 7).

17. The instant case was filed on August 11, 1980.

18. This case was placed in civil suspense from October 15, 1981 until June 16, 1983 pending resolution by the Pennsylvania Supreme Court of Cianfrani's state court action.

*Discussion*

This case requires me to determine the legal consequences of uncontested facts. On September 23, 1977, a federal grand jury indicted Henry J. Cianfrani on charges that he placed two "ghost" workers on the payroll of the Pennsylvania Senate Majority Committee on Appropriations, and that he later caused one of those individuals to be transferred to the payroll of the Senate Majority Leadership Expense Fund. On December 30, 1977, Cianfrani entered pleas of guilty to those charges. Cianfrani has not argued in this lawsuit that he did not engage in the activities charged by the

grand jury. Nor has he contested that those activities constituted a violation of 18 U.S.C. § 1962(c). Cianfrani seeks to avoid the imposition of treble damages under 18 U.S.C. § 1964(c) on three grounds: First, he contends that § 1964(c) does not provide the Commonwealth a treble damages remedy because the Commonwealth had set off the amount by which it was damaged before it instituted this suit. Second, Cianfrani argues that the Commonwealth's set-off of its damages from his retirement payments constituted an election of remedies. Third, Cianfrani claims that any damages sustained by the Commonwealth were the result solely of "predicate acts" under 18 U.S.C. § 1962(c), and that RICO's treble damages remedy should apply only to harms other than those caused by predicate acts.

■ Cianfrani's first argument rests on the language of 18 U.S.C. § 1964(c) which provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Defendant contends that the Commonwealth is not an injured person because § 1964(c) provides a remedy only for a person who "sustains" an injury. Defendant argues that Congress' use of the present tense of the verb "to sustain" reflects an intent to limit the treble damages remedy to persons who have not recouped their losses.

This argument is not persuasive. Cianfrani's interpretation would enable any person guilty of violating § 1962 to avoid the imposition of treble damages by the simple device of making restitution before the injured person brings suit. To adopt such a restrictive reading of § 1964(c) would contravene Congress' mandate that the RICO statute be construed liberally to effectuate its remedial purposes. P.L. 91–452 § 904, *reprinted in* 18 U.S.C.A. following § 1961.

Cianfrani's claim that the Commonwealth is not an injured person is based not on policy or precedent, but on semantics, and I reject it.

Although my interpretation of § 1964(c) is based on the terms of the RICO statute, I note also that precedent from antitrust law provides some support for this conclusion. For example, the Supreme Court has ruled that, under § 4 of the Clayton Act, courts may not deduct from the amount of an unlawful overcharge any part of the injury which the victim has recouped. *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 262–63 n. 14, 92 S.Ct. 885, 891–92 n. 14, 31 L.Ed.2d 184 (1972) (recoupment through increased tax revenue); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 489, 88 S.Ct. 2224, 2228, 20 L.Ed.2d 1231 (1968) (purchaser's recoupment of overcharge through increasing volume, decreasing other costs, or increasing resale price not deducted).

■ Cianfrani's second argument is that the Commonwealth's set-off of the amount paid to the "ghost" workers against Cianfrani's pension bars further recovery under the doctrine of election of remedies. In support of this contention, the defendant argues that the Commonwealth's set-off under 71 Pa.C.S.A. § 5953 is inconsistent with the present suit for treble damages. Cianfrani characterizes the self-help remedy provided by § 5953 as a legislative action that, like prior judicial or administrative actions, should bar subsequent inconsistent efforts to recover for the same injury.

As the Supreme Court has stated, the doctrine of election of remedies "refers to situations where an individual pursues remedies that are legally or factually inconsistent...." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974) (footnote omitted). The purposes of requiring a party to elect a remedy are to prevent "double recovery, forum shopping, and harassment of defendants by dual proceedings...." *Consolidated Express, Inc. v. New York Shipping Association, Inc.,* 602 F.2d 494, 525 (3d

Cir.1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980). I do not agree with Cianfrani's characterization of the set-off as a remedy inconsistent with the instant treble damages action. In exercising the power of set-off, the Commonwealth advanced no legal theory or factual assertion at odds with the present suit. By directing Cianfrani's retirement payments to the Senate treasury, the Commonwealth did no more than recoup the funds of which it had been wrongfully deprived. Such conduct left open the possibility that federal law would provide a remedy greater than was available under state law.

■ I also conclude that the set-off does not constitute satisfaction of a remedy such as to preclude further recovery. *Cf. Abdallah v. Abdallah,* 359 F.2d 170, 175 (3d Cir.1966). Withholding Cianfrani's retirement payments was simply a self-help collection device to recoup all or part of the monies of which the Commonwealth had been deprived by the defendant's wrongful conduct; it did not constitute a final adjudication of the Commonwealth's legal remedies.

■ Cianfrani's final argument—that RICO's treble damages remedy should not apply to harms caused by predicate acts— is of much greater moment. Indeed, his position has recently been accepted by the Second Circuit Court of Appeals and by at least one judge of this court. *See Sedima, S.P.R.L. v. Imrex Company, Inc.,* 741 F.2d 482 (2d Cir.1984); *Erlbaum v. Erlbaum,* 1982 Fed.Sec.L.Rep. ¶ 98, 772 (E.D.Pa. 1982).

Nevertheless, the separate injury requirement proposed by Cianfrani has achieved far less than uniform acceptance. *See In re Catanella and E.F. Hutton and Company, Inc. Securities Litigation,* 583 F.Supp. 1388, 1430–37 (E.D.Pa.1984) (and cases cited therein). Those courts that have rejected such a requirement have gen-

erally relied on the absence of a statutory basis for a separate injury requirement, and the difficulty of defining precisely what injuries could be redressed by the treble damages provision.

After careful consideration of this issue, I conclude that the line of cases declining to impose a separate injury requirement is more persuasive. I recognize that current application of the RICO's civil penalties far exceeds the intended reach of a statute designed for "racketeer influenced" and "corrupt" organizations. But the source of the RICO's overbreadth, and thus the appropriate focus for those who seek to reform it, is not judicial misinterpretation of the statute, but Congress' failure to tailor statutory penalties to the evils sought to be eradicated. As the current split in authority demonstrates, however, this issue is one that must be resolved by our Court of Appeals and, ultimately, the Supreme Court.[1]

■ In short, Cianfrani does not contest either that his actions violated § 1962(c) or the amount of the Commonwealth's damages, and I conclude that his arguments against imposition of treble damages under § 1964(c) are without merit. I will therefore enter an award of treble damages, less the amount which the Commonwealth has recovered through its set-off. The Commonwealth will also be entitled to costs and an award of counsel fees, upon submission of a detailed declaration of the time counsel devoted to this case, the manner in which that time was spent, and a proposed hourly rate. Because I find for plaintiff on Count I of the Complaint, I need not consider the state law fraud claims in Count II. Accordingly, I make the following:

### Conclusions of Law

1. Cianfrani's participation in the scheme and artifice to defraud the Commonwealth of Pennsylvania and its citizens

---

1. Since the defendant has been convicted of violating § 1962(c), I need not consider whether such a conviction, or proof of a § 1962 violation beyond a reasonable doubt, should be required

in a civil treble damages action. *Cf. Sedima, S.P.R.L.,* 741 F.2d at 496–504; *Viola v. Bensalem Township,* C.A. 84–3184 slip op. at 10–11 (E.D.Pa. Nov. 8, 1984).

constituted a violation of 18 U.S.C. § 1962(c).

2. The Commonwealth of Pennsylvania is a "person" within the meaning of 18 U.S.C. § 1961(3) and § 1964(c).

3. The Commonwealth was injured in its business or property by reason of Cianfrani's violation of § 1962(c) in the amount of $30,232.80.

4. The Commonwealth is entitled to treble damages in the amount of $90,698.40 less the amount of $30,232.80 which was set off from Cianfrani's retirement payments.

5. The Commonwealth of Pennsylvania is entitled to judgment in the amount of $60,465.60.